In the Matter of the Estate of WILLIAM F. WHEELER, Dec'd.

(*Surrogate's Court, Cattaraugus County, Filed December* 22, 1892.)

1. COLLATERAL INHERITANCE TAX—PARENTAL RELATION.
   One who has been brought up by testator from childhood and treated as one of the family, although not adopted by him, is one to whom he stood in the relation of a parent within the meaning of the statute.

2. SAME—REAL ESTATE—EQUITABLE CONVERSION.
   While real estate which descends or is devised directly to wife or children is not taxable, yet if the decedent makes such a testamentary disposition of his real estate as to convert it into personalty, the shares of the legatees under such a will are liable.

3. SAME—POSTPONEMENT OF ASSESSMENT.

A larger part of testator's real estate was partnership property, and the actual value of his interest depended largely on the manner in which it was controlled. The will directed the executors to continue in the partnership until it might be disposed of to the best advantage. *Held,* a proper case for postponement of the assessment and collection of the tax until the parties entitled came into actual possession.

Collateral inheritance tax proceedings.

William E. Wheeler, for executors; H. O. Wait, county treasurer, in person.

DAVIE, S.—William F. Wheeler died at the town of Portville, Cattaraugus County, on the 6th day of June, 1892, leaving a will, which was admitted to probate by the Surrogate's Court of said county on the 21st day of June, 1892, and on the same day letters were issued thereon to William E. and Nelson P. Wheeler, sons of deceased, the executors named in said will.

Shortly thereafter an appraiser was appointed, upon the application of the executors, to determine the value of the estate of decedent subject to taxation pursuant to the provisions of the "Act in relation to taxable transfers of property." Chapter 399, Laws 1892. Such assessment was made, and report thereof duly filed, and this controversy arises upon the proceedings to determine the amount of tax to which said estate is liable, as required by section 13 of said act.

By the terms of the will and codicils thereto, the testator devised to his wife the use, during her life, of certain real estate designated in the will as the " homestead," and also bequeathed to her certain articles of personal property and the sum of $20,000 absolutely, one-half thereof to be paid upon the probate of the will, and the balance in one year from the death of the testator. To each of his two daughters the testator bequeathed the sum of $5,000 in addition to certain specific articles; to his son Nelson he devised an undivided one-half of the testator's interest in certain lands in the County of Venango, Pennsyl-

11

vania; and to each of his sons the sum of $5,000. By the terms of his original will, testator bequeathed the sum of $2,400 to one Emma Godfrey, but by a codicil to said will this bequest was revoked, and in place thereof Miss Godfrey was given an annuity of $300 during her life.

The original will further provided: "I appoint Nelson P. Wheeler and Wm. E. Wheeler (my sons) for the executors of my will, and also appoint them my trustees, to whom I give and bequeath to each the sum of four thousand dollars, in addition to the aforesaid bequests to them. All the rest and residue of my estate, both real and personal, whatsoever and wheresoever situated in any of the United States, I give, devise and bequeath to my sons, Nelson P. Wheeler and Wm. E. Wheeler, or their survivors, and the heirs, executors and administrators of such survivor, in trust, first, to pay and expend all such sums as may be necessary for the support and education of my minor children, in order that they may be supported and educated in a manner suitable to their state in life, until said children may arrive at their majority. Second, I direct my said executors and trustees to divide the remainder of my estate among my children, Nelson P., Wm. E., M. Augusta and Lilla, and my said wife, Morilla, each an equal share, which I direct my executors, heretofore named, to make as soon after the said children, or the survivor of them, shall arrive at majority, and my estate, last aforesaid, disposed of to the best advantage according to the nature thereof, and when it shall be in the minds of my executors not necessary to continue longer any of my said estate in partnership with that of other persons now holding in partnership with me."

Then followed in the will an express direction to the executors to continue said estate in partnership with that of said other persons until the same might be fully disposed of to the best interest of said estate, and full power and authority was therein given to the executors to sell and convey said real estate.

The original will bears date the 21st day of March, 1866. By a codicil thereto, under date of November 20, 1882, the

testator further provided that "the gift and bequest of the sum of four thousand dollars to each of my sons, William E Wheeler and Nelson P. Wheeler, in my said former will, is hereby ratified, but it is to be expressly understood that the said bequests are made to them severally as compensation for their services as executors and trustees under my last will and testament, and are to be paid to them severally only in the event they serve in that capacity, and I do further will and ordain, that for their services as such executors and trustees they be severally paid in addition to said bequest each at the rate of one thousand dollars for each year of such service, and further, that the foregoing compensatory provisions in their behalf shall be in full satisfaction to them respectively for all such services."

The first question which arises is upon the claim of the legatee, Miss Godfrey, to exemption from taxation under the provisions of said act.

She is of the age of fifty-six years, and no relation to the testator; the present cash avlue of her annuity, ascertained and computed in the manner directed by section 11 of said act, is the sum of $2,759.06, and, if liable to taxation at all, is at the rate of five per cent.

This legatee had never been adopted by the testator in conformity with the laws of this State, but the reason urged for such exemption is that she is "a person to whom the deceased, for not less than ten years prior to his death, stood in the mutually acknowledged relation of a parent." Section 2 of said act.

The evidence shows that this legatee was left motherless and homeless at the age of six years; that she was thereupon taken into the family of the testator, and continuously resided there up to the time of his death; she was educated by the testator and always supported and maintained by him; she had no income or property of her own, and no communication whatever with any of her own relatives, except to occasionally visit a brother residing near by; she always enjoyed the same family privileges and social advantages as did the daughters of the

testator; was always received in company in the community where testator lived as a member of his family; testator from time to time made gifts to his children, always giving an equal amount to this legatee; shortly before his death all of testator's children visited him, and he presented to each the sum of $1,000, giving to Miss Godfrey the same amount; he procured a policy of insurance upon his life for the sum of $3,000, in which his two daughters and Miss Godfrey were named as beneficiaries to an equal amount. The life estate to the wife of the property designated in the will as the "homestead," is followed by this injunction: "I do hereby direct and ordain that it be and remain also a home for our said daughter Lilla, and our friend, Emma Godfrey, respectively, as long as they, or either of them, may need or desire to make that their home."

Notwithstanding all these facts, it is contended that, inasmuch as there was no legal adoption of this legatee by the testator, and as he designates her in his will by the term of "friend" and not that of "daughter," she is not entitled to the exemption. These suggestions impress me as having but little force; the statute under which this tax is sought to be enforced is, to some extent, penal in its nature, and should receive a liberal construction in favor of those sought to be brought within its operation. The fact that testator did not speak of this legatee as a daughter is of little importance in view of all the facts disclosed by the evidence, showing conclusively that, for a long period of years, testator treated her, in every particular, the same as he did his own daughters, always actuated by the same solicitude for her comfort and welfare as for theirs. The reciprocal relations existing between testator and his own children were no better defined than those between him and this legatee; there was an utter dependence upon the one side, and all the evidences of paternal protection upon the other; she always received from the testator the support and maintenance expected from a parent, and extended to him the obedience, deference and respect due from a child. In my judgment it would be difficult to conceive of a case more clearly within the spirit and

intent of the exempting portion of the statute, and it must be held that the bequest to Miss Godfrey is not subject to taxation under said act. Matter of Spencer, 21 St. Rep. 145; Matter of Butler, 58 Hun, 400, 34 St. Rep. 189.

The report of the appraiser shows the value of the personal estate of decedent to be the sum of $146,921.80. From this should be deducted a specific legacy to the Presbyterian church society, of the town of Portville, of $3,000, the value of the annuity of Miss Godfrey, $2,757.90, and debts of the testator to the amount of $6,000, leaving a balance of $135,163.90, subject to taxation at the rate of one per cent., making a total tax of $1,351.63, to be paid by the said legatees in proportion to the amount of their specific shares and legacies, and no reason is urged, and, in fact, none seems to exist, why said tax should not be immediately payable.

But a more perplexing question is raised in relation to the liability of the real estate to taxation. Under the provisions of the statute, chapter 399, Laws 1892, the real estate, if devised directly to the sons and daughters, would not be liable to taxation, but it is urged that, by the terms of the will, there is an equitable conversion of the real estate so that the legatees take no interest in the real estate itself, but in the proceeds derived from the sale thereof.

While it is undoubtedly true that a will must at least be of such a character as to leave no doubt of the testator's intent to have his real estate converted into personalty in order to sustain the theory of equitable conversion, Hobson v. Hale, 95 N. Y. 588, it would seem that the provisions of this will would admit of no other construction. It not only clothes the executors with certain powers regarding the control and management of the estate, but specifically gives them the power to contract for the sale of the same and execute deeds of conveyance thereof, directs the payment of an annuity to Miss Godfrey during her life, provides for the support and education of his minor children, and directs an equal division of the residuum after payment of the specific legacies among his wife and four children.

This undoubtedly constitutes a conversion of the real estate. Hatch v. Bassett, 52 N. Y. 359; Power v. Cassidy, 79 id. 602; Dodge v. Pond, 23 id. 69.

While real estate which descends or is devised as such directly to the wife or children is not taxable, it is evident that if decedent makes such a testamentary disposition of his real estate as to convert it into personalty, the shares of the legatees under such a will are liable.

All taxes imposed by the act referred to are due and payable at the time of the transfer, provided, however, "that taxes upon the transfer of any estate, property or interest therein limited, conditioned, dependent or determinable upon the happening of any contingency or future event, by reason of which the fair market value thereof cannot be ascertained at the time of the transfer as herein provided, shall accrue and become due and payable when the person or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof." Section 3, chapter 399, Laws 1892.

It appears in this case that the real estate of which testator died seized was very largely, if not entirely, partnership property, used and occupied by him in connection with other persons in the prosecution of the lumbering and tannery business, and that the actual value of such real estate or testator's interest therein, is dependent largely upon the manner in which the same is controlled; this seemed to have been the consideration which prompted the testator to clothe his executors with discretionary power regarding the manner and time of disposing of the same, and it is by no means practicable to ascertain the value of such interest at the present, but would seem to be a very proper case for postponing the assessment and collection of the tax to which the same might be subject until the parties entitled thereto come into actual possession or enjoyment thereof.

A decree will be entered accordingly.