O'Brien and Follett, JJ., concurred.

Judgments reversed, new trial ordered, costs to appellant to abide event.

---

In the Matter of the Appraisal under the Legacy and Inheritance Tax Act of the Estate of Wilson G. Hunt, Deceased.

Theodore F. Vail and Others, as Surviving Executors, etc., of Wilson G. Hunt, Deceased, Appellants; Ashbel P. Fitch, as Comptroller of the City of New York, Respondent.

*Inheritance tax — mutually-acknowledged relation of parent and child — applies only to illegitimate children.*

In section 2 of chapter 399 of the Laws of 1892, being an act to tax gifts, legacies and inheritances in certain cases, which directs that, where property or any beneficial interest therein passes by a transfer to or for the use of any person to whom the decedent, grantor, donor or vendor for not less than ten years prior to such transfer, stood in the mutually-acknowledged relation of a parent, or to any lineal descendant of such decedent, grantor, donor or vendor, born in lawful wedlock, such property shall not be taxable under said act unless it be personal property of the value of $10,000 or more, in which case it shall be taxable under said act at the rate of one per centum, the provision relating to persons to whom the decedent stood "in the mutually-acknowledged relation of a parent," covers only the case where an illegitimate child has been recognized by its parent and such recognizance has been mutual and has continued for ten years or more.

Appeal by Theodore F. Vail and others, as surviving executors, etc., of Wilson G. Hunt, deceased, from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 23d of January, 1895, which affirmed an order entered in said Surrogate's Court on the 31st day of August, 1894, fixing the amount of the tax of the legacies bequeathed to Ellen D. Hunt by the last will and testament and codicil of Wilson G. Hunt, deceased.

The proceeding was instituted by the executors of the will and codicil of Wilson G. Hunt for an appraisal of the property passing under the will and codicil of their testator which was subject to taxation under the act to tax gifts, legacies and inheritances in certain cases.

*D. B. Ogden*, for the appellants.

*Emmet R. Olcott* and *Edgar J. Levey*, for the respondent.

VAN BRUNT, P. J. :

The legatee in this case was the niece of the testator. But it is claimed upon the part of the appellants that the testator stood to her in the mutually-acknowledged relation of parent at the time of his death; and that, therefore, the gift to her should be taxed at one per cent instead of five per cent. The surrogate in the court below assessed the tax at five per cent, and from the order thereupon entered this appeal is taken.

The section of the act which governs the question involved is section 2 of chapter 399 of the Laws of 1892, and so far as it affects the question here, is as follows : " When the property or any beneficial interest therein passes by any such transfer to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of a son or the husband of a daughter, or any child or children adopted as such in conformity with the laws of this State, of the decedent, grantor, donor or vendor, or to any person to whom any such decedent, grantor, donor or vendor for not less than ten years prior to such transfer stood in the mutually-acknowledged relation of a parent, or to any lineal descendant of such decedent, grantor, donor or vendor born in lawful wedlock, such transfer of property shall not be taxable under this act, unless it is personal property of the value of ten thousand dollars or more, in which case it shall be taxable under this act at the rate of one per centum upon the clear market value of such property."

It is admitted that the legatee was not a child of the testator nor was she a child who had been legally adopted by the testator ; but it is urged that she comes under the third class mentioned in the section above quoted which refers to persons who, while neither actual chil-

dren nor adopted children, have sustained to the testator such a relation that they are entitled to the same consideration in the eye of the law as if they had been of his flesh and blood. In other words, that a person who has been treated as a child by the testator — whether he or she has been adopted as provided by law, or whether he or she is of the testator's blood or not — is entitled to the benefit of the statute. It is urged that the legatee in the case at bar was treated by the testator as his child, and that she lived with him as his daughter, and that, therefore, she is entitled to the exemption. Upon the other hand it is claimed upon the part of the respondent that she was not acknowledged as his daughter by the testator, but that he in his will speaks of her as his niece; and that whatever services were rendered by the legatee to the testator were not those rendered by a child to a parent, but rather those of a relation who expected to be compensated by the last will and testament of her relative.

It seems to us, however, that an examination of the act clearly shows what the mutual acknowledgment of the relationship referred to in the act is intended to cover. First is mentioned the legitimate child, next is mentioned the adopted child, and next, we think, is intended to be mentioned the illegitimate child who has been for ten years acknowledged as the testator's child, and such acknowledgment has been mutual. That the question of legitimacy was in the mind of the framers of the statute is manifest from the next clause of the section in question. It says: "Or to any lineal descendant of such decedent, grantor, donor or vendor, born in lawful wedlock," thereby excluding from lineal descendants any other person except those descending from the legitimate child. It is significant that the words "lawful wedlock" are used in respect to this matter of lineal descendants immediately after the mutual acknowledgment, and that it had not been at all considered necessary to refer to it when a child or children was spoken of in the previous part of the section. It is evident that it was intended to limit the exemption of illegitimate descendants to the child, and not to extend the same to the descendants of such child.

Furthermore, what do the words "mutually acknowledged" mean? The word "acknowledged" is never applied to the admission of a fiction. It is only used in relation to a fact. When a fact is spoken of as being acknowledged, it means that the fact exists,

and its existence is admitted. So when the statute speaks of parentage being acknowledged, or of relationship being acknowledged, it means that the relationship existed and has been openly acknowledged, and that yet the child acknowledged had not the rights of a child because born out of wedlock.

It is urged upon the part of the appellants that it seems clear that the only object the Legislature could have in view in providing that the relation must be one which is mutually acknowledged, was to declare the character and degree of evidence which the claimant must produce in order to sustain the claim that mutual acknowledgment does not create the relation, as it sometimes will the relation of husband and wife. The learned counsel is seemingly mistaken in regard to his assumption that the acknowledgment of the relation of husband and wife will create the same; whereas the law is well established that no amount of acknowledgment can make a contract of marriage. Such acknowledgment may be used as evidence for the purpose of establishing the fact that a contract of marriage had previously been entered into, but it cannot create such contract. If such contract did not exist, no amount of acknowledgment could bring it into being. And this view is entirely applicable to the case at bar. If the relationship does not exist, no amount of acknowledgment can create it, and was not intended so to do by the statute. All that the clause in question seems to have been intended to cover was the case where an illegitimate child had been recognized by its parents, and such recognizance was mutual and had continued for ten years. In such a case it was intended that the legatee should have the benefit of the statute. We cannot imagine how it could have been the intent of the Legislature to have made it possible to acknowledge or recognize a relationship which had no foundation in fact.

One of the lexicographers says: "Acknowledge is opposed to keep back or conceal and supposes that something had been previously known to us, though perhaps not to others, which we now feel bound to lay open or make public. Thus a man acknowledges a secret marriage; one who has done wrong acknowledges his fault; an author acknowledges his obligations to those who have aided him." So in the statute the parent acknowledges his illegitimate

child and the child acknowledges his parent, and the mutual acknowledgment provided for by the statute takes place.

The order should be affirmed, with costs.

Parker and O'Brien, JJ., concurred.

Order affirmed, with costs.