·In the Matter of the Taxation of the Property of EMELINE P. NICHOLS, Deceased, under Chapter 399 of the Laws of 1892.

ABEL MERCHANT, as Executor, etc., of EMELINE P. NICHOLS, Deceased, and Others, Appellants; GEORGE H. MACY, County Treasurer of Columbia County, Respondent.

*Transfer and succession tax — mutually acknowledged relation of parent, not limited to illegitimate children — construction of legislative act — words not interpolated unnecessarily.*

The Legislature is presumed to use apt words to express the meaning and intent of its enactments, and it is ordinarily the duty of the court, in construing legislative acts, to give the language employed in them its usual and ordinary signification and force.

The court should not interpolate words into a statute where the language is clear without such interpolation; as to do so amounts to unauthorized judicial legislation.

Where a testatrix, for more than ten years prior to the time when she made her will, stood in the mutually acknowledged relation of parent to a legatee under her will, a bequest to such legatee is, by the express language of section 2 of chapter 399 of the Laws of 1892, exempt from the five per cent succession or transfer tax imposed by that statute.

The exemption from taxation created by section 2 of chapter 399 of the Laws of 1892, is not limited to illegitimate children, but extends to all cases where the decedent, grantor, donor or vendor has, for not less than ten years prior to the transfer, stood in the mutually acknowledged relation of parent to the person whose interest is sought to be taxed.

*Matter of Hunt* (86 Hun, 232), distinguished.

APPEAL by Abel Merchant, as executor, etc., of Emeline P. Nichols, deceased, and others, from an order and decree of the Surrogate's Court of the county of Columbia, entered in said Surrogate's Court on the 16th day of July, 1895, confirming the report of an appraiser appointed by the surrogate, and assessing the inheritance tax upon the property and interests of certain legatees under said will, and also from an order or decree of said Surrogate's Court, entered in said Surrogate's Court on the 28th day of September, 1895, dismissing the appellants' appeal from said order and assessment and affirming the said order, and adjudging that the property and interests of certain legatees mentioned in said will were subject to the operation of chapter 399 of the Laws of 1892.

*John B. Holmes*, for the appellants.

*N. H. Browning*, for the respondent.

MAYHAM, P. J.:

The appraiser appointed by the surrogate, under the provisions of chapter 399 of the Laws of 1892, fixed the fair market value of that portion of the real and personal estate devised and bequeathed to the devisees and legatees, in whose behalf this appeal is taken, as follows:

To Josephine Beers, real estate $1,000, and personal property $7,624.68.

To Carrie N. Childs, real estate $1,000, and personal property $7,627.88.

To Phœbe S. Walker, real estate $1,000, and personal property $7,750.08.

The correctness of these appraisals is in no way questioned or in controversy on this appeal.

On these appraisals the surrogate imposed a transfer tax of five per cent, and from the order fixing such tax this executor and each of the above-named devisees and legatees appealed to the surrogate, claiming on such appeal that these legatees should only be taxed one per cent on the clear market value of the personal property transferred to them under and by virtue of the will, and that nothing should be taxed upon the real estate devised to them, for the reason that for more than ten years prior to the transfer of such property, each of such devisees and legatees had stood in the mutually acknowledged relation of parent and child to the testatrix.

That appeal was brought to a hearing, and on such hearing it was shown, by undisputed testimony and other evidence, that each of the devisees and legatees who are appellants herein were in infancy taken by the testatrix into her family, and were in all things reared, educated and provided for as her children, were called by her name and adopted the same, and were treated as her children, and as sisters (although the case does not disclose that they were in any way of kin to her or to each other), and that each of them so lived in her family and occupied that relation to her and to each other for more than ten years; that the testatrix spoke of and to them as her daughters, corresponded with them by letter as such, and, on

their marriage, furnished each of them respectively with an outfit and wedding, gave them birthday and holiday presents as is customary between parent and children. And testatrix in her will referred to them as "having lived many years in my family, and married therefrom, and regarded as my children."

On such appeal the surrogate affirmed the order and decree appealed from, and dismissed the appeal, and from that determination the appellants appeal to this court.

The only question presented on this appeal for determination is whether, under the provisions of section 2 of chapter 399 of the Laws of 1892, the testatrix, "for not less than ten years prior to such transfer, stood in the mutually acknowledged relation of a parent" to these appellant beneficiaries under her will, within the meaning of the provisions of that section. There are three distinct classes exempted from the succession tax of five per cent by section 2 of chapter 399 of the Laws of 1892.

*First.* The persons expressly named in that section, being the father, mother, husband, wife, child, brother, sister, wife or widow of a son, or husband of a daughter of the testator, donor or grantor, and the lineal descendants of such decedent, grantor, donor or vendor, born in lawful wedlock.

*Second.* Any child or children adopted by decedent, grantor, donor or vendor in conformity with the laws of this State.

*Third.* Any person to whom any such decedent, grantor, donor or vendor, for not less than ten years prior to such transfer, stood in the mutually acknowledged relation of a parent.

It is conceded that the appellants do not come within the first or second class above enumerated; but it is insisted that the appellants, who are devisees and legatees, in this case are persons as to whom the testatrix stood in the mutually acknowledged relation of parent for more than ten years prior to the making of the devise and bequests to them in the will, and are, therefore, exempt from the five per cent succession tax.

If this exemption can be based simply upon the *mutually acknowledged relation of parent*, without the existence of that relation in fact, a stronger case for its allowance than the one under consideration cannot well be imagined.

But it is insisted by the learned counsel for the respondent that

" *the mutually acknowledged relation of parent*" is not enough, unless it prove the parentage in fact, and in support of that contention he cites *Matter of Hunt* (86 Hun, 232), and claims that that is a case precisely in point and decisive of this question.

The great respect entertained by this court for the opinion of the distinguished judge who pronounced the opinion of the court in that case, and for the learned judges in that department who concurred in his opinion, as well as the desire of this court to follow well-considered opinions pronounced upon the same question in other co-ordinate departments of this court, furnish sufficient reason for this department to follow the decision in that case, provided on examination it shall be found that the case under consideration is identical in principle and fact with the case to which we are referred.

On a careful examination of the case, *Matter of Hunt (supra)*, we think it distinguishable from the one at bar in many important particulars. It does not show that the beneficiary named in the will had lived in testator's family for ten years prior to the bequest, in the mutually acknowledged relation of a child, or that the decedent and legatee had ever recognized or acknowledged the existence of such family relation; on the contrary, the testator in his will speaks of her as his niece, and does not appear to have assumed towards her at any time the relation of parent, and there does not appear to have been anything in their relation to warrant the inference that she lived with him as his daughter.

There is no doubt, therefore, of the correctness of the determination of the court in that case, and as the exemption in the statute did not apply to that case, the court was not necessarily called upon to determine what persons or class of persons came within the exemption, so long as it did not embrace the person named in the will, and we think that the remark of the judge, which tended to limit this provision of the statute to illegitimate children, and expressly his statement that " all that the clause in question seems to have been intended to cover was the case where an illegitimate child had been recognized by its parents, and such recognizance was mutual, and had continued for ten years," was not necessary for the decision of the case he was considering, and was, therefore, *obiter*.

If we are right in our conclusion that the *Hunt* case differs from this, and that the statement of the judge above quoted was not nec-

THIRD DEPARTMENT, DECEMBER TERM, 1895. [Vol. 91.

essary to the determination of that case, then we may, without questioning the correctness of that result, examine this statute as applicable to the case at bar without impugning the correctness of that decision. We are, therefore, at liberty to examine this statute as an original proposition, and in the light of all the adjudications bearing upon the case. Section 2 of chapter 399 of the Laws of 1892 reads as follows: "When the property or any beneficial interest therein passes by any such transfer to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of a son or the husband of a daughter, or any child or children, adopted as such in conformity with the laws of this State, of the decedent, grantor, donor or vendor, or to any person to whom any such decedent, grantor, donor or vendor, for not less than ten years prior to such transfer, stood in the mutually acknowledged relation of a parent, or to any lineal descendant of such decedent, grantor, donor or vendor, born in lawful wedlock, such transfer of property shall not be taxable under this act, unless it is personal property of the value of ten thousand dollars or more, in which case it shall be taxable under this act, at the rate of one per centum upon the clear market value of such property."

If this language is capable of construction as it stands, without interpolating or importing into it any idea or significance not clearly expressed or contained in its wording, it is the duty of the court so to construe it. The Legislature is presumed to use apt words to express the meaning and intent of its enactments, and it is ordinarily the duty of the court, in construing an act of the Legislature, to give the language employed its usual and ordinary signification and force.

Tested by this rule, what was the intent of the Legislature when in this act it used the words extending this exemption "to any person to whom any such decedent, grantor, donor or vendor, for not less than ten years prior to such transfer, stood in the mutually acknowledged relation of a parent?" Did the Legislature, in the use of the words "any person," employ them in the general sense which the words themselves clearly import? Or did it intend that the court in construing that general expression should interpolate between the adjective and noun the qualifying adjective "illegitimate," so that it should read and mean "any illegitimate person," etc. If that was not the legislative intent then the insertion of that word by the court would, it seems to us, be unauthorized judicial legislation.

It seems clear to us that the use of these general words was intended to embrace a class of persons, who, while not in fact sustaining the blood relation of parent and child, had assumed and adopted that conventional relation, by mutually acknowledging it by their method of living, and mutual recognition of that relation for ten years.

It does not seem to be the fact of the existence of the relation, but the acknowledgment of its existence for the time fixed, which controls the right to the exemption from this tax.

The existence of the relation to the decedent, donor, grantor or vendor of the kinsmen by consanguinity or affinity, or actual adoption according to the laws of the State, entitles the persons designated to the exemption without regard to the time of the existence of such relations, while the acknowledged relation of parent and child to be effectual for that purpose must be for a period of ten years.

There is no apparent reason for that extended period, if the relation of parent and child existed in fact, although the beneficiary was not born in lawful wedlock, and the paternity or maternity in fact was intended as the only ground of exemption.

But when the relation of parent and child was the result of conventional arrangement, mutual acknowledgment of the existence of that relation for a period of ten years was made conclusive evidence of its existence. While it is true that the existence of such a conventional arrangement would not allow the child to inherit the estate of the decedent, in the absence of a testamentary provision in its favor, still there are many cases in which the law recognizes and gives effect to a presumed or implied obligation growing out of such relation, where the parties stand in the relation of parent and child, and it may be assumed that in enacting this statute the Legislature had in view the existence of such obligations.

It is urged by the respondent that, as the Legislature refers in this section to children born in lawful wedlock, it must have had in mind illegitimate children, and hence the provision under discussion must have related to such persons; but it may with equal and perhaps more force be urged that as such children were in contemplation by the Legislature if it had intended this provision to apply to them solely, it, instead of using the phrase "to any person," would have said "to any illegitimate person," and thus limited the effect of the word "any" to that class of persons.

We, are therefore, led to conclude that the language used was not intended to restrict this exemption to illegitimate children alone, but was intended to cover cases of children adopted in fact, and where the mutually acknowledged relation of parent and child had existed for ten years prior to the transfer.

This view is strengthened by some of the adjudications upon the Collateral Inheritance or Succession Tax Law.

In *Matter of Butler* (58 Hun, 400) it was held that where the decedent had adopted a boy two years of age, under the laws of the State of Massachusetts, who lived with the testator for eleven years, when the testator died, after having bequeathed to the boy about $50,000, the bequest was not chargeable with the collateral inheritance tax, imposed under chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887, which provided for the exemption from the payment of such tax of " Any child or children adopted as such in conformity with the laws of the State of New York, or any person to whom the deceased, for not less than ten years prior to his or her death, stood in the mutually acknowledged relation of a parent," and DYKMAN, J., in delivering the opinion of the General Term in the second department, in discussing that case, uses this language: " There is no reason for a severe construction of this statute. This boy was legally adopted under laws substantially similar to our own, so far as the mode of procedure is concerned, and that is sufficient to answer the requirements of this law. *Moreover the deceased stood in the mutally acknowledged relation of a parent to this appellant for eleven years and a half prior to his death. No evidence of adoption is required by this portion of the statute* but mutual acknowledgment, and that is proven in this case by all the facts and circumstances which cluster around these parties from the commencement of their relation, to the death of the testator."

The provisions of chapter 713 of the Laws of 1887 upon this subject are substantially identical with the provisions of section 2 of chapter 399 of the Laws of 1892; and there is a marked similarity between that case (*Matter of Butler, supra*) and the one at bar in reference to the mutually acknowledged relation of parent and child; and if in that case no evidence of legal adoption was required, the same must be true in this.

The learned judge, in his opinion in *Matter of Butler* (*supra*), quotes with approbation the opinion of KENNEDY, Surrogate, in *Matter of Spencer* (21 N. Y. St. Repr. 145), in which it was held that the relation of one who stands in the place of a parent may arise by virtue of an agreement between adults, or from circumstances surrounding the commencement and continuance of such relations, and that it was the intent of the law to give this class of cases the benefit of its exempting clause.

In *Matter of Wheeler* (51 N. Y. St. Repr. 513), DAVIE, Surrogate, held that one who had been brought up by the testator from childhood, and treated as one of the family, although not adopted by him, is one to whom he stood in the relation of a parent, within the meaning of section 2 of chapter 399 of the Laws of 1892.

None of these cases are referred to or considered in *Matter of Hunt* (*supra*), but each is more directly in point with the case under consideration, and more in accord with our views of the construction of this statute than that case. We are, therefore, of the opinion that the learned surrogate erred in affirming the order appealed from, and dismissing the appeal. The order and decree of the surrogate, made and entered on the 16th day of July, 1895, assessing the tax at the rate of five per centum on the value of the property appraised as belonging to Josephine Beers, Carrie N. Childs and Phœbe S. Walker, appellants herein, and the order dismissing their appeal, made and entered on the 28th day of September, 1895, are reversed, and the order of July sixteenth so modified as to impose a tax of one per centum on the appraised value of the personal property bequeathed to the said appellants respectively, and the real estate devised to them respectively should be exempted from any succession tax, with costs and disbursements of this appeal to the appellants.

PUTNAM and HERRICK, JJ., concurred.

Order of surrogate reversed, and order of July sixteenth so modified as to impose a tax of one per centum upon the appraised value of the personal property bequeathed to the appellants respectively, and to exempt the real estate devised to them from any succession tax, with costs and disbursements of this appeal to the appellants, to be paid by the county treasurer of the county of Columbia.