But the presence of a saloon in proximity to a building is prohibited only when the building is "occupied exclusively as a schoolhouse," and the relator contends that the house in question is not so occupied. What is the exclusive occupancy intended by the statute? Obviously, an occupancy for a different and independent purpose; for a purpose having no relation to the use of the building as a schoolhouse. If the additional use of the building be incidental only, and no way inconsistent with its primary and paramount use as a schoolhouse; if the additional use be under the control of the school authorities, and instrumental to the end of imparting instruction; if it be so trivial and insignificant as not to detract from the pervading character of the building as a resort for learning,—then surely such use does not abolish the exclusive occupancy intended by the statute. The fact of which the relator affirms that it forfeits this exclusive occupancy is that seven persons, not teachers in the school, live in the building, and pay for their board. But these persons are teachers by profession, and members of the brotherhood by which the building is owned and the school conducted. They prosecute their studies in the building. They pay for their subsistence only, and the money goes to the support of the school. The fund so paid is the wages of teaching, and is expended in the interest of teaching. And, finally, the residence and maintenance of these teachers in the building is an essential principle in the system of economy by which the school is supported and administered. To what other use than to promote the interests of education can it be said with reason that the building is appropriated? "A school building may have in it rooms for the use of the students and teachers, and it would still be occupied exclusively as a schoolhouse within the meaning of the statute. Such use of parts of the building is incidental to the process of education, and is just as clearly within the policy of the law as if the entire structure was used exclusively for school room." People v. Murray, 148 N. Y. 175, 176, 42 N. E. 584. Indisputably, under the administrative system of the Christian Brotherhood, the boarding in its buildings of members who teach in other schools is an incident of its process of education. I conclude, therefore, that the occupancy by the seven persons of the building in question leaves it still essentially nothing but a schoolhouse.

Writ discharged, and proceeding dismissed.

---

(16 Misc. Rep. 442.)

## In re FLEMING.[1]

(Supreme Court, Special Term, New York County. March, 1896.)

DESCENT AND DISTRIBUTION—MURDER OF ANCESTOR.

Where the remainder-man under a will has been indicted for the murder of the life tenant, his petition to compel payment of the estate to him

Application by Mary Alice Almont Fleming to compel payment to her of money in the custody of the court. Denied.

---

[1] Reversed. See 39 N. Y. Supp. 156.

Gratz Nathan and John C. Shaw, for petitioner.
George H. Yeaman, for defendant.

PRYOR, J.   In deference to the earnest and persuasive appeal of counsel for the petitioner, the disposition of this matter has been delayed until opportunity was afforded for a thorough examination of the argument submitted in support of the application.   Such examination has been made, and, upon due research and reflection, I reach the conclusion to adopt the order intimated by the learned referee in his opinion.   It is impossible to distinguish the case, in principle, from the reason of the decision in Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, namely, that "no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime."   The petitioner is indicted for the murder of her mother, upon the termination of whose life the petitioner was to have the property in question.   By the murder of her mother, if so it be, the petitioner at once secured property, which she would have lost, had the life tenant survived her, and accelerated the possession and enjoyment of that property.   It is insisted that the case is discriminated from Riggs v. Palmer by the circumstance that Palmer had been convicted of the murder, whereas the petitioner is only indicted.   But the difference is of no significance.   In a civil action, involving an issue of fact between private parties, the determination of that fact in a criminal prosecution by the people is not even evidence, much less a conclusive adjudication, of the fact.   Hence the conviction of the petitioner on trial of the indictment for the murder of her mother would not be legal proof of the fact of the murder in this proceeding, and between these litigants.   1 Whart. Ev. § 776; Wells, Res Adj. § 420.   In Riggs v. Palmer, although the defendant had been convicted of the murder, the issue of fact whether he committed the murder was tried over again before the referee, and was determined upon the proofs then produced.   The essential and the decisive fact in the case, shown by the indictment, is that the petitioner is charged with the criminal destruction of the life, the expiration of which was the indispensable condition of her right to the possession and enjoyment of the fund in controversy.   Livingston v. Tucker, 107 N. Y. 549, 550, 14 N. E. 443.   If she murdered her mother, she is not entitled to the possession and enjoyment of that fund.   If she be innocent of the murder, she is entitled to such possession and enjoyment.   Her right, therefore, cannot be adjudged until the determination of this issue of fact.   The referee finds that the legal title to the fund is in the petitioner, but this alone gives her no indefeasible right to the possession and enjoyment of it.   In Ellerson v. Westcott, 148 N. Y. 149, 153, 42 N. E. 540, the allegation sought to be introduced into the pleading was that "the defendant had caused the death of the testator, to enable her to come into possession of the estate devised to her."   Assuming the fact, the court, per Andrews, C. J., speaking of its effect, said "that a court of

equity will intervene, and deprive her of the benefit of the devise. It will defeat the fraud by staying her hand, and enjoining her from claiming under the will. But the devise took effect on the death of the testator, and transferred the legal title and right given her by the will. The relief which may be obtained against her is equitable and injunctive. The court, in a proper action, will, by forbidding the enforcement of the legal right, prevent her from enjoying the fruits of her iniquity." By her application for the fund, the petitioner solicits the equitable intervention of the court, and compels consideration of the fact that would defeat her claim to equitable relief. The application being to the court in equity, it were an available and insuperable ground of refusal that to grant it would be to concede to the petitioner "the fruits of her iniquity." Until, then, the fact be ascertained whether the petitioner murdered her mother, her right to the possession and enjoyment of the fund cannot be determined. But a trial of this issue in a civil proceeding pending the indictment might be of private and public mischief. Less evidence of the fact of the murder would suffice in the civil than in the criminal action. If the fact be found against the petitioner in this proceeding upon a mere preponderance of evidence, it might be of prejudice to her on the trial of the indictment, to a conviction upon which proof beyond a reasonable doubt is requisite. If it be answered that this is a hazard which the petitioner is willing to incur, then it is remarked that her acquittal in this proceeding might be—nay, probably would be—of prejudice to public justice on the trial of the indictment. In either view, therefore, the issue raised upon the present application should be first agitated and determined on the trial of the indictment. Indeed, it is a prevalent rule of public policy that, when an accusation of crime is involved in concurrent criminal and civil actions, the trial of the civil will be suspended until the determination of the criminal prosecution. Wells, Res Adj. § 420. To the suggestion that some of the parties interested in the fund, in case of the incapacity of the petitioner, do not appear in opposition to its receipt by her, the response of the referee is satisfactory.

Application denied, with leave, however, to renew when the indictment is disposed of. No costs.

---

(2 App. Div. 240.)

### SCOTT v. SCOTT.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

NOTES—RIGHTS OF ASSIGNEE—BONA FIDE PURCHASER.

In an action, for plaintiff's sole benefit, brought on notes assigned to him, as security for himself and others, plaintiff, having had notice that the maker had received no consideration therefor, cannot recover as a bona fide purchaser, though the others for whose benefit they were assigned had no notice thereof.

Appeal from circuit court, New York county.
Action by G. R. Scott against John Scott. From a judgment on