### In re CAPRON'S ESTATE.

*(Surrogate's Court, Orange County.    March 11, 1890.)*

DESCENT AND DISTRIBUTION—LEGACY TAX—STEP-CHILDREN.

At the time of testatrix's marriage, about 30 years before her death, her husband had four daughters by a former wife. One was married, and the other three lived with their father and testatrix until they married. They called testatrix "mother," and received a mother's care from her. The same friendly relations continued after the marriage of the daughters. *Held* that, as to the three daughters who were unmarried at the time of testatrix's marriage, testatrix had, "for not less than 10 years prior to her death, stood in the mutually recognized relation of parent," within the legacy tax law, so as to exempt legacies to them, but that this relation did not exist as to the other daughter.

Proceedings for the collection of the collateral inheritance and legacy tax on the estate of Helen Capron, deceased.

*J. G. Graham,* for the executrix.

COLEMAN, S.    The testatrix died September 17, 1888, and by her will, after giving a number of specific legacies of small value, gave all the residue of her property to four daughters of her deceased husband by a former wife. At the time of her marriage to the father of these legatees, some 35 years ago, the youngest of them was 9, the next older 16, and a third 22, years of age. These three remained at home with their father and step-mother until their respective marriages.    The fourth daughter had married and left home before the marriage of testatrix.    While the three younger daughters remained at home the testatrix looked after their education, training, deportment, and clothing.    She gave them the care and protection of a mother; and they recognized her right to do so, and always addressed her as mother, and she spoke of them as her children    After their marriage the same friendly relations and manner of address continued so far as they could, under their changed circumstances.    She did not, however, contribute to their support except in the matter of care of themselves and their clothing.    The question now arises whether the testatrix, "for not less than ten years prior to her death, stood in the mutually recognized relation of a parent" to these legatees, so as to bring them within the class excepted from taxation.    A step-parent does not necessarily stand in the relation of a parent, within the meaning of this act, to step-children.    Whether they do or not depends on the circumstances of each case.    I think, in order to constitute this relation, some time during the continuance of the intercourse between the persons there should be a period of dependence on the part of the younger, a time when the younger required and received parental care, though not necessarily a dependence for support and maintenance; for this the natural mother does not generally provide.    This relation must therefore begin in youth, though not of necessity during legal minority; and it should not be confounded with relations which, growing out of mutual needs or wishes, have resulted in warmest friendships, and some times in forming a household, but one in which the parental element is lacking.    I find parties, in seeking exemption from this tax, frequently mistake this latter relation for the parental one.    It often happens, indeed it is usually the case, that in after years, as the children grow to womanhood and manhood, they separate from their parents, and establish homes of their own; but they are no less parents and children.    So, too, this relation may continue between persons who have come by force of circumstances to occupy that relation, even after they have discontinued liv-

ing together. In this case the testatrix and these legatees continued their interest in each other till her death, frequently visiting each other, continuing their previous style of address,—they in time coming to care for her comfort; and when she dies they become her chief legatees. From these observations it results, and I therefore conclude, that the testatrix did not stand in the relation of a parent to the oldest of the four legatees,—the one who had married and left home before her father's marriage,—but that she did so to the other three.