In the Matter of the Appraisal, under the Transfer Tax Act, of the Estate of JOHN W. DAVIS, Deceased.

CHARLES ADSIT et al., as Executors, Appellants; THE COMP-TROLLER OF THE STATE OF NEW YORK, Respondent.

1. TRANSFER TAX — WHEN TESTATOR STOOD "IN THE MUTUALLY ACKNOWLEDGED RELATION OF A PARENT" TO A LEGATEE, SO THAT THE LATTER IS ENTITLED TO EXEMPTION UNDER THE STATUTE (TAX LAW [L. 1896, CH. 908], § 221, AS AMD. BY L. 1898, CH. 88, AND L. 1901, CH. 458). Where it appears upon the appraisal of the estate of a testator under the statute relating to taxable transfers of property, that a legatee of the testator, when a child about six years of age, was taken, upon her mother's death, from the home of her father to the home of her aunt, who was the wife of testator, where she continued to live as a member of his family until his death, a period of over thirty years, and that during her infancy she was supported and maintained at the expense of the testator and was subject exclusively to his control and that of his wife, the father in no respect contributing to her support nor exercising any direction over her, it is properly held that such legatee sustained to the testator the relation of a "child to whom any such decedent * * * for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent, provided, however, such relation began at or before the child's fifteenth birthday and was continuous for said ten years thereafter" (Tax Law [L. 1896, ch. 908], § 221, as amd. by L. 1898, ch. 88, and L. 1901, ch. 458), so that her legacy is taxable only at the rate of one per cent on the excess above $10,000; the fact that such legatee did not address her uncle and aunt as father and mother, nor they call her daughter, is of slight, if of any, importance, since being the niece of the testator's wife, it was more natural that she should continue to call them uncle and aunt than that she should adopt a new term.

2. SAME — EVIDENCE. The fact that, when such legatee, upon the death of her father, became entitled to a legacy under her grandfather's will, the testator received the legacy as her guardian and upon her arriving at age turned it over to her without accounting for the income thereof received by him, is immaterial where the legatee had been thirteen years in the testator's family, supported wholly at his expense, before she had any property whatever and, after the receipt of the legacy, the testator had presumably used the income to give such legatee greater educational advantages than he had previously felt able to afford, since a father might have done the same thing, even if it be assumed that without authority from some court it would have been unjustified.

*Matter of Davis*, 98 App. Div. 546, reversed.

(Argued February 27, 1906; decided March 13, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 15, 1904, which modified and affirmed as modified a decree of the Steuben County Surrogate's Court assessing a transfer tax upon the estate of John W. Davis, deceased.

The facts, so far as material, are stated in the opinion.

*Milo M. Acker* for appellants. The decedent standing in parental relation exempts this legatee from paying a collateral inheritance tax in excess of that paid by children. (L. 1896, ch. 908, § 221; *Matter of Capron*, 30 N. Y. S. R. 948.) The test of whether the testator, John W. Davis, stood in the mutually acknowledged relation of a parent to this legatee, as required by the statute, is, did each render to the other the reciprocal parental duties and filial service incident to the actual relation of parent and child? (*Matter of Spencer*, 21 N. Y. S. R. 145; *Matter of Wheeler*, 1 Misc. Rep. 450; *Matter of Capron*, 30 N. Y. S. R. 948; *Matter of Beach*, 154 N. Y. 242.) The providing and accepting of a home was of itself a mutual acknowledgment of the parental relationship required by the statute. (*Matter of Spencer*, 21 N. Y. S. R. 145; *Lyon* v. *Lyon*, 65 N. Y. 339; *Matter of Wheeler*, 1 Misc. Rep. 450.)

*Newton B. Gorham* for respondent. Decedent did not stand in the relation of parent to Jennie F. Lyon. (*Matter of Birdsall*, 22 Misc. Rep. 180; 43 App. Div. 624; *Matter of Deutsch*, 107 App. Div. 194; *Matter of Davis*, 98 App. Div. 546; *Matter of Capron*, 30 N. Y. S. R. 948.) The relation was not mutually acknowledged and the essence of the required relationship is that it must be mutually acknowledged to exist. (*Matter of Spencer*, 21 N. Y. S. R. 145; *Matter of Butler*, 58 Hun, 400; *Matter of Moulton*, 11 Misc. Rep. 694; *Matter of Birdsall*, 22 Misc. Rep. 180; 43 App. Div. 624; *Matter of Deutsch*, 107 App. Div. 194; *Matter of Davis*, 98 App. Div. 546.)

CULLEN, Ch. J.    The sole question presented by this appeal is whether the appellant, Jennie F. Lyon, a legatee under the will of John W. Davis, sustained to that testator the relation of a "child to whom any such decedent  *  *  *  for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent, provided, however, such relation began at or before the child's fifteenth birthday and was continuous for said ten years thereafter." If she did sustain such relation, her legacy was taxable only at the rate of one per cent on the excess above ten thousand dollars; if not, the legacy was subject to a tax of five per cent. The surrogate decided in the appellant's favor. The Appellate Division has reversed that decision.

As the order of the Appellate Division is silent as to the grounds on which it was made it must, under section 1338 of the Code of Civil Procedure, be presumed that the decree of the surrogate was reversed on questions of law only, and if there was any evidence to sustain the finding of the surrogate in favor of the appellant the order of the Appellate Division was erroneous. (*Matter of Keefe*, 164 N. Y. 352.)    We think the evidence was ample to justify the finding of the surrogate. The facts, tersely stated, are as follows : The appellant was a niece of the testator's wife and was born on January 31st, 1866.    Her mother died November 12th, 1872, whereupon her aunt, Mrs. Davis, took the appellant from her father's home to her own, where the appellant continued to live as a member of the testator's family till his death on January 11th, 1903, a period of over thirty years.    During her infancy the appellant was supported and maintained at the expense of the testator and was subject exclusively to his control and that of his wife, the father in no respect contributing to the appellant's support nor exercising any direction over her.    On her father's death in 1885 the appellant became entitled under the provisions of her grandfather's will to the sum of one thousand dollars and fifty shares of Wells, Fargo Company stock.    The testator Davis received this legacy as guardian of the appellant, and upon her arriv-

ing at age turned the legacy over to her without, however, accounting for the income received by him. After the receipt of the legacy the testator sent the appellant to boarding school in Albany for two years. The appellant was married from the testator's house and after her marriage continued to reside with him. Her aunt, the testator's wife, died nine years before the testator, and from that time the appellant took charge of the household matters. The appellant addressed the testator and his wife as uncle and aunt. They called her " niece," and she is so designated in the testator's will.

. Upon the enactment of the statute relative to taxable transfers in 1892 (Chap. 399) there arose considerable conflict in . the decisions of the lower courts as to what was necessary under the provisions of the statute to constitute " the mutually acknowledged relation of parent." In some courts it was held that this provision comprehended only the case of illegitimate children. The proper construction of the statute was settled by this court in *Matter of Beach* (154 N. Y. 242) where Chief Judge ANDREWS, writing the unanimous decision of the court, said : " The clause, we think, was intended to have a broader scope ; to include, among others, those cases, not infrequent, where a person without offspring, needing the care and affection of some one willing to assume the position of a child, takes, without formal adoption, a friend or relative into his household, standing to such person *in loco parentis*, or as a parent, and receives in return filial affection and service." In that case the legatee who had been denied the reduced rate of taxation by the lower court was a married lady of middle age living with her husband. They had resided for the statutory period with the testator in his house, and the legatee had managed the household affairs of the testator. The evidence to support the legatee's claim of exemption was found in very brief affidavits, in which it was averred that the testator had stated that the legatee was his adopted daughter, and also his promise that he would treat her as a daughter. It does not appear in what terms the legatee and testator addressed one another. On these facts this

court, reversing the courts below, held that there existed between the parties the "mutually acknowledged relation of parent." After the decision in the *Beach* case the legislature amended this section of the statute by inserting the qualification now found, " provided, however, such relationship began at or before the child's fifteenth birthday and was continuous for said ten years thereafter." (Chap. 88, Laws 1898.) This amendment was intended to exclude persons from the benefit of the section unless the relationship was formed in the tender years of the legatee, but except as thus modified the decision in the *Beach* case remains in full force. We think it would be difficult to find a stronger case of a person taking " without formal adoption a friend or relative into his household standing to such person *in loco parentis* or as a parent, and receives in return filial affection and service " than is presented by the case at bar. It is objected·that the appellant did not address her uncle and aunt as father and mother, nor they call her daughter. This is of but slight importance. To give effect to it would be to sacrifice conduct and acts to appellations which are often the result of accident. Had the appellant been an entire stranger both in blood and affinity it is probable that she would have called the testator and his wife father and mother, but still other terms denoting affection might have been used. Being, however, the niece of the parties (of the testator by marriage), it was more natural that she should continue to call them uncle and aunt than that she should adopt a new term. It is also objected that the testator did not account to the appellant for the income received by him on her legacy before it was paid over to her. It is urged that this shows that he assumed to set off the expense of her support against such income. This also, under the circumstances, is of no force. The appellant had been thirteen years in the testator's family supported wholly at his expense before she had any property whatever, and ten years before her grandfather's death, when it became certain that she was to receive any property in the future. While it is true that, strictly speaking, as the father of the appellant, the testator would have been bound to support her

entirely at his own expense, it was natural that after the legacy
had become payable to her the testator should think it wise
to apply that income to give the appellant greater educational
advantages than hitherto he had felt himself able to afford.
A father might have done the same, even if we assume that
without authority from some court it would have been
unjustified.

The order of the Appellate Division should be reversed
and the decree of the surrogate of Steuben county affirmed,
with costs in both courts.

O'BRIEN, HAIGHT, VANN, WERNER and WILLARD BARTLETT,
JJ., concur; HISCOCK, J., not sitting.

Ordered accordingly.