35 N.J. Super. 42 (1955)
113 A.2d 75
CLARA J. BRAVAND, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JOHN SUTMAN, DECEASED, APPELLANT,
v.
AARON K. NEELD, DEPUTY DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF TREASURY, STATE OF NEW JERSEY, RESPONDENT. IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF JOHN SUTMAN, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1955.
Decided March 29, 1955.
*44 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. William H. Burns, Jr., argued the cause for appellant (Messrs. Karkus & Kantor, attorneys; Mr. Ezra W. Karkus, of counsel).
Mr. Joseph A. Jansen argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey; Mr. William A. Moore, Deputy Attorney-General).
The opinion of the court was delivered by JAYNE, J.A.D.
Only a few words are necessary to reveal the factual substructure of the present appeal. John Sutman, a resident of the Borough of Highlands, Monmouth County, died intestate on October 8, 1953, leaving him surviving a niece, Clara Jane Bravand, the daughter of his deceased brother, as his nearest next of kin and heir at law.
Letters of administration were issued to her on November 12, 1953 and on June 2, 1954 in her representative capacity she filed with the Transfer Inheritance Tax Bureau of the Division of Taxation a report of the assets of the decedent's estate of the appraised net value of $32,212.16, to which entire estate she claimed to be entitled as the niece, i.e., sole next of kin and heir of the decedent.
On August 11, 1954 the Bureau levied an assessment of transfer inheritance taxes on the transfer in the amount of $2,576.97 which was computed at the rate of 8% as prescribed by N.J.S.A. 54:34-2(d).
The rate and amount of the tax assessment are the subject matter of the present litigation, and the discord evolves from the following mutually admitted circumstances.
The appellant, Clara Jane Bravand, was the natural and lawful child of Nicholas Sutman, the decedent's brother, and Annie S. Sutman. Her father, Nicholas Sutman, died on *45 January 28, 1901. The decedent married his sister-in-law Annie on May 30, 1901, at which time the appellant was 13 years of age. Clara, the niece, thus became also the stepdaughter of the decedent.
Upon the occurrence of the marriage a mutually acknowledged relationship of parent and child between the decedent and Clara originated, which notwithstanding her marriage to Rudolph J. Bravand on April 2, 1919 continued until her stepfather's death.
In determining the rates to be applied to the taxation of transfers embraced by the pertinent statute, the Bureau is normally governed by the provisions of N.J.S.A. 54:34-2 which, after specifying the rates applicable (a) to parents, spouses, natural and adopted children of the decedent, (b) to religious and charitable institutions, and (c) to brothers and sisters, wife or widow of a son, and husband or widower of a daughter, provides in subdivision (d) that the transfer to every other transferee, distributee or beneficiary not thereinbefore classified shall be taxed at 8% on any amount up to $900,000. The last mentioned rate is undoubtedly the one to be adapted to a taxable transfer to a niece of a decedent.
However, in view of the facts in the present case, the provisions of N.J.S.A. 54:34-2.1 cannot be ignored. Accuracy and precision recommend the quotation here of the significant paragraphs of the section:
"The transfer of property passing to any child to whom the decedent for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent, provided such relationship began at or before the child's fifteenth birthday and was continuous for ten years thereafter, shall be taxed at the same rates and with the same exemptions as the transfer of property passing to a child of said decedent born in lawful wedlock.
The transfer of property passing to a stepchild of a decedent shall be taxed at the same rates and with the same exemptions as the transfer of property passing to a child of said decedent born in lawful wedlock."
Here it is a stipulated fact that the appellant was a stepchild of the decedent, and moreover for more than ten years prior to the intestate distribution to her and before her *46 fifteenth birthday there originated and continued between the decedent and herself a mutually acknowledged relationship of parent and child.
True, it is a general principle of law that the alleged right of a claimant to a total or partial exemption from taxation perhaps in any legitimate form must be clearly established "free from fair doubt." Sisters of Charity of St. Elizabeth v. Cory, Coll'r., 73 N.J.L. 699 (E. & A. 1907); Trenton, City of, v. State Board of Tax Appeals, 127 N.J.L. 105 (Sup. Ct. 1941), affirmed sub nom. Trenton, City of, v. Rider College, 128 N.J.L. 320 (E. & A. 1942); Trustees of Rutgers University v. Piscataway Twp., 134 N.J.L. 85 (Sup. Ct. 1946); New Jersey Turnpike Authority v. Washington Tp., 16 N.J. 38, 44 (1954); Borough of Edgewater v. Connoil Corp., 4 N.J. Super. 338 (App. Div. 1949).
It is an associated principle that a statutory grant of exemption from taxation should not be construed to extend in scope beyond the ordinary import and signification of the terms of the concession. County Bank & Trust Co. v. Neeld, 32 N.J. Super. 124, 127 (App. Div. 1954).
It is immediately recognized that in the present proceeding there is no doubt whatever concerning the factual basis of the appellant's claim. The statutory provisions said to have pertinency are cited. Assuredly the transfer is taxable. N.J.S.A. 54:34-1. The appellant is the transferee.
The fact that the appellant inherited the estate of the intestate decedent by reason of her relationship of a niece of her deceased uncle and could not under the law have inherited by virtue of a relationship of stepdaughter is conceded. This, therefore, is not a situation in which the appellant was legally entitled to inherit either in consequence of consanguinity or by some other affinity, such as, for example, the dual relationship of a niece and a legally adopted child. N.J.S.A. 54:34-2; N.J.S.A. 9:3-9.
Indubitably the taxable transfer was one effectuated "by the intestate laws of this state" to transport the decedent's estate to his surviving niece in her identity as his next of kin and heir at law.
*47 Concisely expressed, the inquiry to which we are asked to respond is whether since it is evident that the niece was also the stepchild of a decedent who during the requisite period of time "stood in the mutually acknowledged relation of a parent" to her, should the transfer be taxed "at the same rates and with the same exemptions as the transfer of property passing to a child of said decedent born in lawful wedlock"? Further epitomized, the question is whether the statutory section 54:34-2.1 which has been hereinbefore quoted modifies and narrows the rates of taxation specified in section 54:34-2 in their application to the present transfer.
The lineage of our own transfer inheritance tax legislation is disclosed in my opinion in Squier v. Martin, 131 N.J. Eq. 263 (Prerog. 1942). Section 54:34-2.1, with the terms of which we are here concerned, was enacted in 1937 (L. 1937, c. 128) as a supplement to the act of 1909. L. 1909, c. 228.
Manifestly in the composition and passage of this supplement the legislative interest concentrated on the taxation of transfers of property "passing to" a stepchild of a decedent or to a child in relation to whom the decedent had stood in loco parentis. The motivating reasons for according special considerations to those beneficiaries who in the reality of the circumstances had occupied a relationship to the decedent essentially equivalent to that of a consanguineous child in devotion, affection, and filial services, are easily discernible.
Social experiences and observations have revealed many instances where a remotely related child or an orphaned infant has been reared by a man and wife with as much parental affection and reciprocal devotion as normally exist between natural parents and their offspring. Indeed, in many such alliances the falsely reputed and ostensible affinity is never generally known or suspected.
We must evaluate the propriety of the causes that have deterred the able specialists of the bureau from granting to the appellant the exemption and rate of taxation in pursuance of section 54:34-2.1.
There have been two influential causes. The first of which is that the actual transfer is the subject upon which *48 the tax is levied; that a consummated taxable transfer requires a transferee and, in cases of the decedent's intestacy, the determination of the rate of taxation is governed by the beneficial capacity in which the transferee acquires by succession the decedent's assets. Cf. State v. O'Leary, 144 Kan. 563, 61 P.2d 1325 (Sup. Ct. 1936). It is insisted that in transfers like the present it is the relationship of inheritance that the deceased and the beneficiary bore to each other that fixes the exemption and measures the rate of taxation. Vide, In re Hedenberg's Estate, 89 N.J. Eq. 173 (Prerog. 1918). Yes, it may be noticed that the decision just cited was rendered prior to the enactment of the present supplement of 1937.
The second principal reason for the action of the bureau is the frequently acknowledged circumstance that our transfer inheritance tax legislation is a prototype of the statutory law enacted relative to the subject by the Legislature of the State of New York. True, see, Fidelity Union Trust Co. v. Thayer-Martin, 118 N.J.L. 277, 286 (Sup. Ct. 1937), affirmed 119 N.J.L. 425 (E. & A. 1938); Bugbee v. Van Cleve, 100 N.J. Eq. 263 (Prerog. 1926); In re Moore's Estate, 104 N.J. Eq. 400, 402 (Prerog. 1929), in which it was stated that "the determinations of the New York courts are therefore of much weight, if not controlling."
Consequently where no incongruous or discordant decision to that of the New York courts has been pronounced on the subject by our own, the bureau has conferred precedential authority upon the New York adjudication. In the pursuit of that rational practice the bureau deemed its interpretation of the opinion of the Appellate Division of the New York Supreme Court in In re Linkletter's Estate, 134 App. Div. 309, 118 N.Y.S. 878, 879 (1909) to be decisive.
The ensuing quotation is sufficiently explanatory of the factual circumstances and of the determination expressed in that case. The beneficiary evidently was both a nephew and stepchild of the decedent.
"The respondent, George O. Linkletter, the son of a deceased sister, takes under the will the sum of $30,434.30. After the death of his *49 mother, his father and the testatrix had intermarried. The question involved on this appeal is whether the respondent's share shall be taxed at the rate of 1 or 5 per cent. Section 221 of the tax law (Laws 1896, p. 869, c. 908) was amended by chapter 204, p. 390, of the Laws of 1907, so as to include a stepchild in the exempt class in the case of a transfer of property less than $10,000 in value, and in the 1 per cent. class in case of the transfer of property of the value of $10,000 or more.
If the bequest had been to the respondent by name, there would be no doubt that, under the statute in force at the time, his share would be taxable at the rate of 1 per cent., as he was a stepchild. But under the will he takes as nephew, precisely as he would take under the statute of distributions, had there been no will. As stepchild he could not take under the statute, and the will expressly provides that the property shall go to the relatives of the full blood only in the `shares and proportions fixed by law for the distribution of personalty in cases of intestacy.' Plainly, therefore, the respondent takes as nephew, as one of a class; and it seems to me that the case is precisely the same as though he took under the statute of distributions, in which case it seems obvious that a tax of 5 per cent. would be imposed, because in that case the transfer would be to the nephew, not to the stepson. The fact that the transferee happened to be a stepson as well as nephew would be immaterial, because the character of the transfer, the capacity in which the transferee took, would determine the taxability of the property transferred.
If the tax were a property tax, a different question would be presented. It is unnecessary to cite authority upon the proposition that the tax imposed by the transfer tax law is a tax, not on property, but on the right of succession to property; and it seems, therefore, that the capacity in which the transferee takes should determine whether he comes within the exceptions of section 221.
The question is novel, and not likely to arise often. It is contended with some force that a transfer to the respondent as one of a class should be taxed the same as a bequest to him by name. The decision turns on the construction of sections 220 and 221 of the tax law. Section 220 provides for a tax of 5 per cent. upon every transfer of property of the value of $500 or over. Section 221 creates certain exceptions and limitations to section 220, and I think that, as the tax is on the right of succession, section 221 must be construed with reference to the capacity in which that right is claimed. A transfer to or for the use of a father, mother, husband, wife, child, stepchild, etc., is to be taxable only if the property transferred is of the value of $10,000 or more, and then at the rate of 1 per cent. Of course, there is a transfer in this case to the respondent, who was a stepson; but the transfer was not made because of that relationship. In fact, had he sustained no other relation to the testatrix, he could not have taken. If the transfer had been to him by name, it would doubtless have been prompted by the fact of his relationship as stepson; and, if not in terms, it would in fact have been a transfer to him as such.
*50 In construing section 221, it must not be overlooked that it creates exceptions to and limitations upon the general rule of section 220. I think that, for the purposes of this case, the respondent must be treated solely as a nephew, and that he does not come within the exception."
But examine the decisions in Re Spencer's Estate, 4 N.Y.S. 395 (Sur. Ct. 1889); In re Capron's Estate, 10 N.Y.S. 23 (Sur. Ct. 1890); In re Butler's Estate, 58 Hun. 400, 12 N.Y.S. 201 (Sup. Ct. 1890); In re Stilwell's Estate, 34 N.Y.S. 1123 (Sur. Ct. 1895); In re Nichol's Estate, 36 N.Y.S. 538 (Sup. Ct. 1895).
As vice-ordinary to whom all appeals in inheritance tax assessments were referred for a span of years, I ventured to express the conviction in Creasey v. Zink, 140 N.J. Eq. 111, 117 (Prerog. 1947), that the interpretation and applicability of our transfer inheritance statute repose primarily in the courts of this State and that the decisions of foreign jurisdictions are not to be accorded the leverage of predominant and obligatory edicts. I invited attention to Kunhardt v. Bugbee, 3 N.J. Misc. 1107 (Sup. Ct. 1925); Koch v. McCutcheon, 111 N.J.L. 154 (Sup. Ct. 1933); In re Hartford's Estate, 122 N.J. Eq. 489 (Prerog. 1937); Nicholas v. Martin, 128 N.J. Eq. 344 (Prerog. 1940); Squier v. Martin, supra.
We have in the storage of our own adjudications the decision in Roberts v. Comptroller of Treasury of N.J., 85 N.J. Eq. 133 (Prerog. 1915), concerning the comparable tax concessions embodied in our former Transfer Property Tax Act (L. 1914, p. 267). We are aware that the learned vice-ordinary was also dealing with a transfer by testamentary bequest, but he stated:
"The appellant claims to be within the class thus entitled to exemption. She was a year old when her mother died, and shortly afterwards her father passed away. When she was 4 years old  in 1872  she became a member of the decedent's family, with whom she lived continuously until the latter died in 1915, aged 85 years. She was reared by the decedent, and in turn rendered to her aunt and in her household such filial duties and services usually expected of children. The attachment between the two and the devotion and *51 affection towards each other were those ordinarily existing between mother and daughter. Their intercourse was exquisitely that of parent and child.
The exemption feature of our `Transfer of Property' Tax Act, above quoted, was adopted from the New York statute  Consolidated Laws 1909, c. 60, § 221 (5 Birdseye's [Cumming & Gilbert's] p. 5987)  and the construction given to its prototype by the Court of Appeals of that state I adopt as dispositive of the question at issue. In the Matter of Davis [' Estate], 184 N.Y. 299, 77 N.E. 259, a case almost identical with the present one, Chief Justice Cullen said:
`In some courts it was held that this provision comprehended only the case of illegitimate children. The proper construction of the statute was settled by this court in Matter of Beach, 154 N.Y. 242 (48 N.E. 516), where Chief Judge Andrews, writing the unanimous decision of the court, said: "The clause, we think, was intended to have a broader scope; to include, among others, those cases, not infrequent, where a person without offspring, needing the care and affection of some one willing to assume the position of a child, takes, without formal adoption, a friend or relative into his household, standing to such person in loco parentis, or as a parent, and receives in return filial affection and service."'
* * * Manifestly, the appellant bore to the decedent the relation of a child to whom the latter stood in the mutually acknowledged relation of a parent, within the meaning of the statute. She is entitled to the exemption, and the assessment will be reduced accordingly."
The only perceptible distinction in the material factual circumstances of the Roberts case and the one sub judice is that in the former the property passed to the transferee by will and in the latter the property passed to the appellant under the laws of intestate succession.
Our statute (N.J.S.A. 54:34-1) imposes a tax upon the transfer of property above the stated value "to or for the use of any transferee, distributee or beneficiary" where (a) the property "is transferred by will or by the intestate laws of this State * * *." A transfer includes the passing of property or any interest therein, in possession or enjoyment, present or future, "by distribution by statute, descent, devise, bequest, grant, deed, bargain, sale or gift." N.J.S.A. 54:33-1. No dissimilarity or disparity in respect to the processes by means of which the transfer is accomplished is observable.
*52 It would place a heavy strain on the most flexible imagination to suppose that the Legislature in this particular intended that the making or not making of a will should govern the allowance of an exemption and the rate of taxation. Something for the goose, but nothing for the gander. Certainly such a frail and feeble construction would require the aid of clear and explicit legislative language. Vide, In re Stubbs, 141 Me. 143, 39 A.2d 853, 156 A.L.R. 400 (Sup. Jud. Ct. 1944).
Would not a named beneficiary in a will be obligated to establish his or her qualifications to receive the exemption?
Courts must interpret and enforce the legislative will as manifested by the statute, and not according to some merely supposed unexpressed intention. Camden, City of, v. Local Government Board, 127 N.J.L. 175 (Sup. Ct. 1941); Hoffman v. Hock, 8 N.J. 397 (1952). We are not at liberty through surmise or external considerations to ignore, alter or depart from the clear meaning of the unambiguous statutory language. Burnson v. Evans, 137 N.J.L. 511 (Sup. Ct. 1948); Lewis' Sutherland Statutory Construction (2d ed.) §§ 366, 388.
Moreover a preferential tax discrimination which is intended to accord an exemption to a stepchild or acknowledged child who takes by will and to deny it to a transferee in precisely the same relationship to the decedent who takes by the statutes of intestacy, might well jeopardize faith in its constitutionality.
The motive which many years ago inspired the allowance of an exemption to such transferees is unmistakable. The breadth of the legislative object ought not be unjustifiably cramped by a narrow judicial construction. In fact, it was once resolved in the New York jurisdiction that the legislative intent of this exemption was only to benefit illegitimate children. In re Hunt's Estate, 86 Hun. 232, 33 N.Y.S. 256 (Sup. Ct. 1895). That notion was soon eradicated. In re Stilwell's Estate, 34 N.Y.S. 1123 (Sur. Ct. 1895).
Certain it is that the parts of a statute are to be viewed in relation to the entire existing enactment and reconciled, *53 if possible, to effectuate the reasonably probable legislative policy, and so the general object and intent of a statute guide the interpretation of its parts. Hackensack Water Co. v. Ruta, 3 N.J. 139, 147 (1949).
We think that in its effectiveness section 54:34-2.1 should be regarded as an integrant of section 54:34-2 in their specification of tax exemptions and rates, and we therefore conclude that by reason of the admitted facts the appellant is entitled to the exemption and the assessment is reduced accordingly.