HOPKINS, J.T.C.
Plaintiff (taxpayer) is contesting a final determination by the Transfer Inheritance Tax Bureau of the Division of Taxation which affirmed an assessment of transfer inheritance tax on a distribution received by taxpayer, as a surviving spouse, from the Celanese Stock Bonus and Investment Plan Trust (plan). The amount of transfer inheritance tax at issue is $2,861.55 together with interest.
The basic facts are not in dispute and both parties have moved for summary judgment.
Commencing on December 1, 1962, decedent was employed by Celanese Research Company (Celanese). As such, he was entitled to and elected to participate in the plan. During decedent’s participation, and at the time of his death, the plan was a qualified plan as defined in § 401(a) of the Internal Revenue Code (IRC). Upon his death, taxpayer received a distribution valued at $92,610.22. Of that amount, $77,755.50 was the value of Celanese common stock with the balance of $14,854.72 in cash.
The plan was available to all employees who had completed one year of employment and were compensated on a regular salary basis. Contributions, ranging from 2% to 5% of their compensation, at their election, were made through payroll deductions. Decedent had elected to contribute 5% of his salary.
*645 The plan required Celanese, as the employer, to make monthly contributions out of current or accumulated earnings or profits in an amount equal to 100% of the employee’s basic contributions. These contributions were invested in the common stock of Celanese. Celanese could opt to contribute shares of its common stock in lieu of cash.
Each member was at all times fully vested with respect to his or her own contributions and became immediately vested with respect to Celanese contributions upon death, retirement, discharge without cause or termination due to total and permanent disability. Otherwise, a member became fully vested in the Celanese contributions on December 31 of the third year following the year in which the contributions became due from Celanese. Members could withdraw their own contributions at any time without penalty. In addition, members could withdraw either 25% or 50% of the value of their vested employer contributions within any twelve month period subject to certain conditions not here relevant. However, any withdrawals were required to be in the following priority: first, all or any part of the value of the member’s contributions; second, the total amount of the earnings and appreciation attributable to the member’s contributions, if any; and finally, the value of the employer’s contributions and the earnings and appreciation attributable thereto. Withdrawal of the earnings and appreciation attributable to a member’s contributions resulted in a four-month suspension from contributing. Withdrawal of 25% or 50% of a member’s vested employer contributions and the earnings and appreciation thereon resulted in a six-month or eight-month suspension period, respectively.
Taxpayer filed a transfer inheritance tax return which included the lump-sum distribution and paid the disputed tax. A claim for refund was then submitted on the basis that the distribution from the plan was exempt from taxation pursuant to N.J.S.A. 54:34—4(j). That claim was denied and Director’s position herein is that the exemption statute was intended to confine its exemptions to those private sector pensions, annui *646 ties or retirement allowances which were comparable to the public pension plan exemptions in effect at the date of the enactment of N.J.S.A. 54:34—4(j).
The New Jersey Transfer Inheritance Tax, N.J.S.A. 54:34-1 et seq., is a levy on the right of succession to property, both real and personal, transferred by a decedent in certain specified cases. The shifting of economic benefits and burdens of property, triggered by the death of the decedent, is the taxing event. The tax is levied upon the transferee and the amount to be paid depends upon the value of the distributive share received by the transferee and his or her relationship to the decedent. N.J.S.A. 54:34-1 et seq.; In re Estate of Anne Boyd Lichtenstein, 52 N.J. 553, 559-560, 247 A.2d 320 (1968).
Exemptions from the inheritance tax are listed in N.J.S.A. 54:34-4. The exemption at issue reads as follows:
The following transfers of property shall be exempt from taxation:
j. The value of any pension, annuity, retirement allowance or return of contributions, regardless of the source, which is a direct result of the decedent’s employment under a qualified plan as defined by section 401(a), (b) and (c) or 2039(c) of the Internal Revenue Code, payable to a surviving spouse, and not otherwise exempted pursuant to this section or other law of the State of New Jersey. [¿,.1981, c. 152, § 1, eff. May 22, 1981]
Director admits that the distribution from the plan was a direct result of decedent’s employment; that the plan was qualified under the IRC; that the beneficiary of the distribution was the decedent’s surviving spouse; and that the distribution is not otherwise exempted. Director maintains, however, that the cash and Celanese stock comprising the distribution and resulting from the accumulation of salary deductions from decedent and matching contributions from Celanese, together with earnings and appreciation, was not a “pension, annuity, retirement allowance or return of contributions” within the meaning of the subsection 4(j) exemption. More specifically, Director contends that the Legislature intended the exemption to apply only to transfers to surviving spouses under qualified private plans which had covered decedents as a result of their employment and which were fundamentally designed to provide *647 pensions at retirement. Further, Director alleges that any plan, even if qualified and meeting other statutory conditions, which permits the participant to withdraw contributions under circumstance here present, could not have its distributions exempted from tax. In this respect, Director uses the Public Employees Retirement System of New Jersey, N.J.S.A. 43:15A-6 et seq. (PERS), as the polestar of the subsection 4(j) exemption. In support of the position, Director relies upon the legislative history of that exemption.
The origin of the exemption was Assembly Bill 1351 (1980). The statement attached to the bill emphasized the need for parity in the inheritance tax treatment of private pensions and public pensions.[1]
In vetoing the bill, the Governor stated that there was no theoretical justification for the distinction between the treatment of public and private pension benefits with regard to the inheritance tax. However, the veto was deemed necessary *648 since New Jersey was facing a severe fiscal crisis and the Governor believed there was no need to extend the exemption beyond the needs of surviving spouses under plans qualified as exempt under the IRC.[2] The bill was amended to conform with the Governor’s recommendations and was signed into law.
In support of the contention that subsection 4(j) should be restricted to private annuities substantially equivalent to the public annuities which had enjoyed the exemption prior to *649 subsection 4(j), Director recognized that subsection 4(j) does not define the terms “pension,” “annuity,” “retirement allowance” and “return of contributions.” However, since some of those terms had been defined in the PERS act, Director relies on those definitions. N.J.S.A. 43:15A-6 provides the following definitions:
b. “Annuity” means payment for life derived from the accumulated deductions of a member as provided in this act.
k. “Pension” means payments for life derived from appropriations made by the employer as provided in this act.
o. "Retirement allowance” means the pension plus the annuity.
Recognizing that the PERS act does not define “return of contributions,” Director points to the term “accumulated deductions,” which was defined in the PERS act to mean “the sum of all the amounts, deducted from the compensation of a member or contributed by him or on his behalf, standing to the credit of his individual account in the annuity savings fund.” N.J.S.A. 43:15A-6(a). Under the PERS act, accumulated deductions are used to fund the annuity savings fund, which together with the contingent reserve fund (in which the State contributions are credited) constitutes the retirement reserve fund from which all retirement allowances are paid. N.J.S.A. 43:15A-24, -25, -27. The accumulated deductions, comprised of the contributions of a PERS member, may be borrowed by that member. N.J.S.A. 43:15A-34. However, such loan must be returned or paid back by members should they elect to withdraw from public employment prior to retirement or should they die before attaining retirement age N.J.S.A. 43:15A-41(a), -38(b), -41(c). Based upon the above, Director concluded that the phrase “return of contributions” is tantamount to a return of “accumulated deductions.” It is on reaching that conclusion that Director’s logic becomes strained.
*650 Subsection 4(j) does not contain the term “accumulated deductions.” Further, the term “return of contributions,” since it is followed by the phrase “regardless of the source,” is a much broader term than “accumulated deductions.” The wording of subsection 4(j) is clear and explicit. It exempts from taxation the value of any “return of contributions, regardless of the source, which is the direct result of the decedent’s employment under a qualified plan as defined by section 401(a), (b) and (c) or 2039(c) of the Internal Revenue Code, payable to a surviving spouse, and not otherwise exempted pursuant to this section or other law of the State of New Jersey.” Where there is no ambiguity or uncertainty in the phraseology of the statute, this court is not at liberty to infer or presume that the Legislature intended something other or different than it actually expressed. “The statutes speak for themselves and must be construed according to their plain terms.” Hopkins v. Neeld, 41 N.J.Super. 345, 351, 125 A.2d 153 (App.Div.1956).
The above principle was iterated in Gauntt v. City of Bridgeton, 194 N.J.Super. 468, 477 A.2d 381 (App.Div.1984) where the court stated:
It is well-recognized that courts must enforce the legislative will as written in the enactment and not according to some unexpressed intention. DaCunzo v. Edgye, 19 N.J. 443, 451 [117 A.2d 508] (1955); Salb v. Lemoine Ave. Associates, 178 N.J.Super. 36, 40 [427 A.2d 1129] (App.Div.1981). “We are not at liberty-through surmise or external considerations to ignore, alter or depart from the clear meaning of the unambiguous statutory language.” Bravand v. Neeld, 35 N.J.Super. 42, 52 [113 A.2d 75] (App.Div.1955). [at 482, 477 A.2d 381]
Here the term “return of contributions, regardless of source” is clear. That which taxpayer received had its source in contributions by her spouse and Celanese. There is nothing to indicate the additional restriction which Director seeks to impose. Accordingly, courts should not resort to extrinsic material, such as the legislative history, to conclude that the Legislature intended something other than what it actually expressed. “Extrinsic aids are never used to create an ambiguity, only to resolve one.” Myers v. Cedar Grove Tp., 36 N.J. 51, 61, 174 A.2d 890 (1961).
It should be further noted that the Governor’s recommended changes in the initial bill were followed in the Legislature. The *651 Governor pointed to the need for more equitable treatment of private pensions and referred to the fact that New York, among other states, did grant such relief to private pensions. It has long been recognized that the New Jersey transfer inheritance tax legislation was a prototype of the statutory law enacted relative to that subject by the legislature of the State of New York. Bravand v. Neeld, 35 N.J.Super. 42, 48, 113 A.2d 75 (App.Div.1955). At the time subsection 4(j) was under consideration, the New York estate tax permitted an exemption for any payment received by a beneficiary, other than the executor, under an employee’s trust forming part of a pension, stock bonus or profit sharing plan which, at the time of the decedent’s separation from employment (whether by death or otherwise) or at the time of termination of the plan, if earlier, met the requirements of § 401(a) of the IRC. That exemption, however, was limited to the percentage of the total contributions which reflected the employer’s actual contributions. N.Y.Tax Law § 249-r (McKinney 1966). Subsection 4(j) specifically included the phrase “return of contributions, regardless of the source” which grants- a full exemption rather than the proportionate exemption given by New York law.
Accordingly, the distribution received by taxpayer met all the requirements of subsection 4(j).
Director will submit a proposed form of judgment providing for refund of the disputed tax and interest pursuant to the provisions of R. 8:9-3.

 STATEMENT
The present law exempts from the transfer inheritance tax contingent annuities payable to eligible beneficiaries of persons who were retired from employment in the public sector.
More specifically contingent annuities under the New Jersey public pension system are exempt (P.L. 1954, c. 84, s. 53, C. 43:15A-53). Also exempt are pensions of civil service employees of the United States Government (R.S. 54:34-4h). This year, the exemption was further extended to military service pensions (Chapter 38 Laws of 1978 amended R.S. 54:34-4i).
However, the present law is inequitable because under it contingent annuities payable to eligible beneficiaries of persons retired from employment in the private sector are subject to the transfer inheritance tax.
The purpose of this bill is to correct this inequity by making the value of all contingent pensions and annuities payable to eligible beneficiaries exempt from the transfer inheritance tax, regardless of whether the source of the pension or annuity was public or private employment.
This is a very much needed change in law because the New Jersey inheritance tax on the value of pensions and annuities paid to eligible beneficiaries under various survivor benefit and family protection plans of employees in the private sector is one of the highest and most exacting in the nation.
According to official estimates the bill could be enacted at a modest cost to the State.

Assembly Bill No. 1351
2 April 27, 1981
To the General Assembly:
Pursuant to Article V, Section I, paragraph 14(b) of the Constitution, I herewith return Assembly Bill No. 1351 with my objections.
This bill would exempt all contingent pensions and annuities payable to eligible beneficiaries from the transfer inheritance tax, regardless of whether the source of the pension or annuity was public or private employment. The present law exempts from the transfer inheritance tax contingent annuities payable to eligible beneficiaries of persons who were retired from employment in the public sector.
More specifically, contingent annuities under the New Jersey public pension system are exempt (P.L. 1954, c. 54, § 53, C. 43:15A-53). Also exempt are pensions of civil service employees of the United States Government (R.S. 54:34-4h). This year the exemption was further extended to military service pensions (Chapter 38, Laws of 1978, amended R.S. 54:34-4i).
There appears to be no theoretical justification for the distinction between the treatment of public and private pension benefits with regard to the inheritance tax. It is a current tax for a deferred receipt. Many, perhaps most states, exempt all pension benefits, including private ones, which qualify under federal law. These states include New York, Connecticut, Delaware and California. Yet while New Jersey faces a severe fiscal crisis, there is no need to extend the exemption beyond the needs of surviving spouses under plans qualified as exempt under the Internal Revenue Code. To do otherwise would permit unscrupulous personal incorporators to establish private annuities to avoid a reasonable tax.
Accordingly, I recommend the following amendment:
Page 3, Lines 73 through 78: After "j." delete in its entirety and insert new section "The value of any pension, annuity, retirement allowance or return of contributions, regardless of the source, which is a direct result of the decedent's employment under a qualified plan as defined by section 401(a), (b) and (c) or 2039(c) of the Internal Revenue Code, payable to a surviving spouse, and other otherwise exempted pursuant to this section or other law of the State of New Jersey.”
Respectfully,
/s/ Brendan Byrne
GOVERNOR